1998 ME 197

**MAINE MUTUAL FIRE INSURANCE CO.**

v.

**Rainald A. GERVAIS, Sr.**

Supreme Judicial Court of Maine.

Submitted On Briefs June 22, 1998.

Decided Aug. 3, 1998.

John C. Walker, Windham, for plaintiff.

William J. Smith, Van Buren, for defendant.

Before WATHEN, C.J., and ROBERTS, CLIFFORD, RUDMAN, DANA, and SAUFLEY, JJ.

SAUFLEY, Justice.

[¶ 1] Rainald Gervais appeals from a judgment entered in the Superior Court (Aroostook County, *Marden, J.*) in favor of his liability insurer, Maine Mutual Fire Insurance Company. Because we conclude that Maine Mutual had a duty to defend Gervais against a lawsuit filed by his former employee, we vacate the judgment.

[¶ 2] This matter arises out of litigation between Aurel Lavoie and Rainald Gervais, Sr.[1] Lavoie was employed at a farm owned by Gervais or one or more corporations controlled by him. After sustaining a work-related injury, Lavoie petitioned for workers' compensation benefits. The Workers Compensation Board dismissed the petition on the ground that Lavoie was employed by Gervais, not the corporations, and that Gervais was an exempt agricultural employer carrying liability insurance. *See* 39–A M.R.S.A. § 401(1)(C) (Supp.1997).

[¶ 3] Lavoie and his wife then commenced a civil action against Gervais, setting forth claims for negligence and loss of consortium. Pursuant to the terms of an employer's liability policy issued to Gervais,

Maine Mutual provided Gervais with a defense. Following a jury trial, judgment in the amount of $30,000 was entered in favor of the Lavoies.[2]

[¶ 4] During the pendency of the negligence action, but prior to trial, the Lavoies filed a six-count complaint against nine defendants, including Gervais, two related corporations, and Maine Mutual. The complaint alleged a deprivation of Aurel Lavoie's rights and remedies under the Workers Compensation Act and before the Superior Court, violations of the Maine Civil Rights Act, abuse of process, tortious breach of contract and interference with contractual relations, and negligent and intentional infliction of emotional distress.[3] Each of these claims was predicated on the conduct of Gervais or his agents during the litigation of the workers' compensation petition and the negligence action. The Superior Court succinctly described the gravamen of the emotional distress complaint:

> Mr. Lavoie's underlying complaint charges [Gervais] with making intentional misrepresentations during his course of conduct subsequent to an injury received by the plaintiff while in the employ of Mr. Gervais which has resulted in alleged deprivation of rights in proceedings before the Workers' Compensation Commission and the Maine Superior Court. Mr. Lavoie claims entitlement to specific special damages which he now asserts he would have received had he successfully obtained workers' compensation benefits and damages for emotional distress.

[¶ 5] In July 1994, the Lavoies filed a satisfaction of judgment in the negligence action, stating that they received from Maine Mutual $30,000 plus $5,000 "towards pre and post-judgment interest and costs ...." On the same day, the Lavoies dismissed Maine Mutual as a defendant and amended the emotional distress complaint to delete any

---

**1.** *See Lavoie v. Gervais,* 1998 ME 158, 713 A.2d 335.

**2.** The jury determined that the Lavoies' damages totalled $50,000, but reduced this recovery to account for Aurel Lavoie's contributory negligence.

**3.** To avoid confusion, we will refer to this complaint as the emotional distress complaint. Because we have recently vacated a judgment on the emotional distress complaint and remanded the matter with instructions to dismiss the complaint in its entirety, no issue of indemnification is before us. *See Lavoie v. Gervais,* 1998 ME 158, ¶ 13, 713 A.2d at 338.

allegations of negligence by Gervais.[4] Maine Mutual subsequently commenced the instant action seeking a declaration that it had no duty to defend or indemnify Gervais against the Lavoies' emotional distress complaint. When the Superior Court entered a summary judgment in favor of Gervais on all counts of the emotional distress complaint, the court determined that Maine Mutual's declaratory judgment complaint was moot and declined to take action on it. However, upon appeal of the summary judgment, both parties asked the court to reopen the declaratory judgment action, and the matter proceeded to hearing on cross-motions for judgment.

[¶ 6] After hearing, the court held that Maine Mutual had no duty to defend Gervais against the Lavoies' emotional distress complaint. The court concluded that the only operative claim in the Lavoies' complaint that could possibly implicate coverage under the policy was the intentional infliction of emotional distress claim, a claim for which the policy would not provide coverage. In particular, the court cited the exclusion for damages "intended or expected" by the insured and found that "the intentional or reckless infliction of emotional distress with certain or substantially certain results of distress is sufficiently consistent with an action of a party that he or she subjectively wanted or subjectively foresaw as a practically certain result of their conduct such as to preclude the application of the contract in issue ." This timely appeal by Gervais followed.

[¶ 7] "Whether an insurer has a duty to defend its insured against a complaint brought by a third party is a question of law[,]" *Northern Sec. Ins. Co. v. Dolley*, 669 A.2d 1320, 1322 (Me.1996), and we review the trial court's decision *de novo. See Vigna v. Allstate Ins. Co.*, 686 A.2d 598, 599 (Me.

1996). Under the comparison test, an insurer's duty to defend its insured against third party claims is determined by comparing the allegations in the complaint with the terms of the insurance policy. *Dolley*, 669 A.2d at 1322. "If the general allegations in the complaint could give rise to any set of facts that would establish coverage, then the insurer has a duty to defend." *Id.*

[¶ 8] The parties do not dispute the court's conclusion that the only claim for which coverage may have been required is the claim of intentional infliction of emotional distress. Their disagreement centers on whether that claim triggers Maine Mutual's duty to defend. Maine Mutual contends that it does not, because the basis for the entire complaint—Gervais's conduct during the litigation—was not an "occurrence," which is defined in the policy as an accident.[5] Maine Mutual further contends that the exclusion for expected or intended bodily injury applies to a claim of intentional infliction of emotional distress.

[¶ 9] Maine Mutual's contentions fail for two reasons. First, the accidental nature of an act depends on the unintended nature of the consequences of the act, rather than the intentional nature of the act itself. And second, a claim for intentional infliction of emotional distress does not necessarily seek damages falling within the intended or expected bodily injury exclusion. Accordingly, as set forth below, a focused application of the comparison test reveals that a duty to defend existed.

[¶ 10] We begin with the relevant coverage provision which provides: "If a ... suit is brought against any 'insured' for damages because of 'bodily injury' or 'property damage' caused by an 'occurrence' to which this coverage applies, we will ... provide a

---

4. Whether the amendment of the complaint was consideration for the payment from Maine Mutual is not clear. Although Gervais asserts that there are "serious public policy implications when an insurer is allowed to negotiate with a claimant to tailor the complaint for the purpose of relieving the insurer from its duty to defend[,]" the parties do not address whether Maine Mutual breached the contract in any way by satisfying the judgment against Gervais. Thus, we do not reach that issue.

5. As an initial matter, Gervais asserts that the court erred by reconsidering its determination that Maine Mutual's declaratory judgment action was moot. We need not address this contention, given that the error, if any, was invited by Gervais. *Cf. Lowery v. Owen M. Taylor & Sons, Inc.*, 374 A.2d 325, 327 (Me.1977) (holding that litigant who acquiesces affirmatively in court's action cannot later assign error to that action).

defense at our expense by counsel of our choice." The policy defines the term "occurrence" as an "accident ... which results in ... 'bodily injury' or 'property damage.'" Although the term "accident" is not defined in the policy, we defined an accident in this context as "an unanticipated event." *See Vigna*, 686 A.2d at 600. Crucial to the understanding of this coverage provision is our ruling that "[t]he 'accidental' nature of an event for purposes of a standard liability insurance contract ... does not derive from the voluntariness of the act, but rather from the unintentional nature of the consequences flowing from the act." *Id.* (*citing Gibson v. Farm Family Mut. Ins. Co. .*, 673 A.2d 1350 (Me.1996)).

[¶ 11] We next review the policy provision excluding coverage for "bodily injury or property damage which is either expected or intended from the standpoint of the insured." This standard exclusion "refers only to bodily injury that the insured in fact subjectively wanted ('intended') to be a result of his conduct or in fact subjectively foresaw as practically certain ('expected') to be a result of his conduct." *Patrons–Oxford Mut. Ins. Co. v. Dodge*, 426 A.2d 888, 892 (Me. 1981). In *Burns v. Middlesex Ins. Co.*, 558 A.2d 701 (Me.1989), we examined this exclusion in the context of intentional torts allegedly committed by the insured. In concluding that the insurer had a duty to defend its insured against a complaint setting forth claims for the intentional torts of slander and invasion of privacy, we held that although designated as intentional torts, neither tort required proof "that the tortfeasor ... 'subjectively wanted' or 'subjectively foresaw' bodily injury as the 'practically certain' result of her conduct." *Id.* at 702–03 (*quoting Dodge*, 426 A.2d at 892)). We must similarly

examine the claim of intentional infliction of emotional distress to determine whether such a requirement exists.

[¶ 12] A careful reading of the elements of the claim reveals that a plaintiff need not prove that the defendant, in fact, wanted the resulting distress to occur or foresaw that distress as a practically certain result of his acts. In *Vicnire v. Ford Motor Credit Co.*, 401 A.2d 148 (Me.1979), we expressly adopted the Restatement (Second) of Torts formulation of the tort, and held that a plaintiff must establish:

(1) the defendant intentionally or recklessly inflicted severe emotional distress or was certain or substantially certain that such distress would result from his conduct;

(2) the conduct was so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious, and utterly intolerable in a civilized community;

(3) the actions of the defendant caused the plaintiff's emotional distress; and

(4) the emotional distress suffered by the plaintiff was so severe that no reasonable man could be expected to endure it.

*Vicnire*, 401 A.2d at 154 (citations omitted). Like invasion of privacy and slander, intentional infliction of emotional distress does not necessarily require proof that the tortfeasor intended or expected the bodily injury. In the context of a civil claim for damages, a person may be said to act recklessly if he knows or has reason to know of facts giving rise to a high degree of risk of harm to another and yet deliberately acts, or fails to act, in conscious disregard of that risk.[6] Because a conscious disregard of a risk of harm is in contrast to, not identical to, an intent

---

6. The Restatement provides a similar definition of reckless conduct:

The actor's conduct is in reckless disregard of the safety of another if he does an act or intentionally fails to do an act which it is his duty to the other to do, knowing *or having reason to know of facts which would lead a reasonable man to realize*, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent.

RESTATEMENT (SECOND) TORTS § 500 (1965) (emphasis added). Other formulations of reckless behavior may apply in different circumstances, *see id.* § 500 cmt. a; *see also Patrons–Oxford v. Dodge*, 426 A.2d at 892 (finding duty to defend insured against civil suit brought by victim of aggravated assault; insured's conviction could have been based on jury's determination that he acted recklessly as defined by the Maine Criminal Code).

that the harm occur, an actor may commit a reckless act without subjectively intending or expecting the result of the act.

 [¶ 13] Finally, we compare the policy provisions—both the coverage provision and the exclusion—against the complaint alleging intentional infliction of emotional distress. Because the focus here must be on the intended consequences of the conduct, not on the nature of the conduct itself, we cannot say on this record that there are no facts alleged under which coverage may be implicated, notwithstanding the burden on the plaintiff to prove extreme and outrageous behavior beyond "all possible bounds of decency." *Vicnire*, 401 A.2d at 154. Indeed, the result apparently intended by Gervais, if the Lavoies' allegations are accepted, was not the emotional harm to Lavoie, but rather an economic advantage for Gervais or his corporations. Because the general allegations in the Lavoies' complaint could establish that the alleged emotional distress was an unintended consequence of Gervais's conduct while still supporting each element of the tort, the Lavoies' complaint was based on an occurrence, as that term is used in the policy.[7] Similarly, because Gervais may be found to have intentionally inflicted emotional distress without subjectively intending or foreseeing the alleged distress suffered by Lavoie, the exclusion for intended or expected bodily injury is inapplicable. *Cf. Maine Bonding & Casualty Co. v. Douglas Dynamics*, 594 A.2d 1079 (Me.1991) (duty to defend insured against wrongful discharge claim); *Massachusetts Bay Ins. Co. v. Ferraiolo Constr. Co.*, 584 A.2d 608, 610–11 (Me.1990) (duty to defend insured against trespass claim). Accordingly, Maine Mutual had a duty to defend Gervais against the Lavoies' complaint.

The entry is:

Judgment vacated. Remanded for further proceedings consistent with this opinion.

---

**7.** Nor are we persuaded by Maine Mutual's argument that the emotional distress complaint, as amended, was carefully crafted to avoid reference to *any* unintended act or consequence. " 'Precision' is not required in the complaint, and it is not necessary for determining a duty to defend." *Travelers Indem. Co. v. Dingwell*, 414 A.2d 220, 226 (Me.1980). In *Dingwell*, we stated that even a complaint which is legally insufficient to withstand a motion to dismiss may trigger the insurer's duty to defend if it reveals an intent to state a claim within the coverage. *See id.* We have also stated that "[a]ny doubt about the adequacy of the pleadings to bring the occurrence within the coverage of the insurance policy should be resolved in favor of the insured." *J.A.J., Inc. v. Aetna Casualty & Sur. Co.*, 529 A.2d 806, 808 (Me.1987).