# United States Court of Appeals

## For the First Circuit

No. 02-1799

AUTO EUROPE, LLC,

Plaintiff, Appellee,

v.

CONNECTICUT INDEMNITY COMPANY,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MAINE

[Hon. D. Brock Hornby, U.S. District Judge]

Before

Lynch, Circuit Judge,
Coffin and Campbell, Senior Circuit Judges.

Andrew J. Gallogly with whom Margolis Edelstein was on brief
for appellant.
Catherine R. Connors with whom Louise K. Thomas and Pierce
Atwood were on brief for appellee.

March 4, 2003

**COFFIN**, **Senior Circuit Judge**.  A Maine company, Auto Europe, LLC, brought this diversity action against Connecticut Indemnity Company ("CI"), seeking a declaratory judgment that the insurance company has a duty to defend Auto Europe in a pending consumer fraud suit.  The district court, over CI's objection, concluded that Maine is the proper venue for the coverage dispute, Maine substantive law governs it, and CI has a duty to defend Auto Europe.  After careful review of the law and the record, we conclude that CI's challenges to those determinations are unavailing.  We also affirm the district court's award of attorney's fees against the insurer.[1]

## I. Background

Auto Europe is a defendant in a lawsuit ("the Harter action") filed in June 2001 by four Illinois residents who claim that the Maine company and two other travel businesses "deceptively concealed" an "add-on" to their charges for foreign car rentals. The Harter plaintiffs contend that the defendants calculated foreign sales tax on a car rental base price that included a non-taxable broker's fee, effectively increasing the brokers' fees in the guise of a charge they claimed was a foreign tax.  The

---

[1] Auto Europe's complaint contained a second count for breach of contract, which, as the magistrate judge noted, was subsidiary to the primary count seeking a declaratory judgment on the duty to defend: "[I]t necessarily follows that, if a duty to defend exists and the insurer has refused to provide a defense, the contract has been breached."  Recommended Decision at 12.  We agree and therefore do not separately discuss the contract claim.

-2-

complaint alleged that the price information given to consumers was "designed to mislead and conceal" the nature of the additional charge, and it accused the defendants of engaging in a "fraudulent scheme of overcharges." The complaint alleged various violations of federal and state law, including both the Maine and Illinois consumer fraud acts.

CI coincidentally insured all three Harter defendants under separate policies, each of which provided the same coverage. Auto Europe's policy promises payment for all sums that the insured becomes obligated to pay because of "any negligent act, error or omission of the 'insured' . . . in the conduct of 'travel agency operations' by the 'named insured.'" The policy excludes coverage, however, for "liability arising out of any act, error or omission which is wilfully dishonest, fraudulent or malicious, or in wilful violation of any penal or criminal statute or ordinances, and is committed (or omitted) by or with the knowledge or consent of the 'insured.'"

Based on the exclusion, CI refused to defend Auto Europe in the Harter action, and Auto Europe thereafter filed this suit.[2] CI filed a counterclaim in the Maine litigation, seeking a

---

[2] Auto Europe also sought defense from another of its insurers, Commercial Union, based on a different policy. Commercial Union sought a declaratory judgment in Illinois on its duty to defend, and after rejecting Auto Europe's attempt to transfer that action to Maine, the Illinois court ruled that Commercial Union did not have a duty to defend based on an exclusion not contained in the CI policy.

declaratory judgment that it had no duty to defend, and it filed suit in Illinois against all three Harter defendants, seeking that same relief. It also filed a motion in Maine to transfer venue of Auto Europe's action to Illinois.

The magistrate judge in Maine denied the transfer motion, determined that Maine law applied to the action, and concluded that CI had a duty to defend Auto Europe. The district court, after a de novo review that included oral argument, affirmed the decision denying transfer of venue and adopted the magistrate judge's recommendation that summary judgment be granted for Auto Europe on the duty to defend. Under Maine law authorizing an award of attorney's fees to an insured when the insurer's duty to defend was "clear," the district court awarded reasonable fees and costs to Auto Europe.[3]

Subsequently, the district court in Illinois also ruled, in the lawsuit filed by CI, that the insurer had a duty to defend in the Harter action. That ruling, applying Illinois law, was not directly applicable to Auto Europe, however, because the Maine company had been dismissed from the Illinois proceedings.

In its appeal of the Maine decision, CI argues that the district court, as reflected in the decisions of both the magistrate judge and district judge, erred on the procedural issues

---

[3] The district court also dismissed without prejudice, as premature, CI's request for a declaratory judgment on indemnification.

-4-

of venue and choice of law as well as in finding a duty to defend under Maine law.  The insurer further objects to the imposition of attorney's fees and costs.  We address each issue in turn.

## II. The Motion to Transfer Venue[4]

The propriety of the venue ruling warrants little discussion. The magistrate judge fully considered and discussed CI's motion and its judgment, particularly when affirmed by the district court, is entitled to considerable deference.  See Osband v. Woodford, 290 F.3d 1036, 1041 (9th Cir. 2002) (noting that magistrate judge's pretrial order is reversible by the district court, under 28 U.S.C. § 636(b)(1)(A), only if it is "'clearly erroneous or contrary to law,'" and that same standard applies to appellate review); Phinney v. Wentworth Douglas Hosp., 199 F.3d 1, 4 (1st Cir. 1999) (same); see also Coady v. Ashcraft & Gerel, 223 F.3d 1, 11 (1st Cir. 2000) (appellate standard of review for venue motion is abuse of discretion).

Although it may have been more efficient to determine CI's duty to defend with respect to all three Harter defendants in the same forum, we do not agree that the district court was obliged to transfer the case to Illinois.  Its reasons for declining to do so

---

[4] The motion invoked 28 U.S.C. § 1404(a), which states:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

-5-

were sound and appropriate, focusing on the weight accorded to plaintiff's choice of the forum in which it is located, the unlikelihood of any witness inconvenience because of the probability of a document-based determination of the duty to defend, and the absence of any compelling reason related to judicial economy. We therefore find no error in the court's denial of the transfer motion.

### III. Choice of Law

CI next challenges the district court's decision to apply Maine law to the coverage dispute. A federal court sitting in diversity jurisdiction must employ the choice-of-law principles of the forum state, Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 491 (1941); Crellin Techs., Inc. v. Equipmentlease Corp., 18 F.3d 1, 4 (1st Cir. 1994), and the district court's choice of law pursuant to the state framework is reviewed de novo, Crellin Techs., 18 F.3d at 4.

Under Maine law, when an insurance contract does not specify the jurisdiction that should govern disputes arising under it,

> the rights and duties of the parties . . . are to be determined at the forum level by the local law of the state which, with respect to that particular issue, has the most significant relationship to the transaction and the parties. Specifically, in a casualty insurance contract . . . the validity of the contract and the rights and duties created thereby, are to be determined . . . by the local law of the state which the parties understood was to be the principal location of the insured risk during the term of the policy, unless with respect to the particular issue involved, some state has

> a more significant relationship to the transaction and
> the parties . . . .

Baybutt Constr. Corp. v. Commercial Union Ins. Co., 455 A.2d 914, 918 (Me. 1983), overruled on other grounds, Peerless Ins. Co. v. Brennon, 564 A.2d 383 (Me. 1989) (adopting Restatement (Second) of the Law, Conflict of Laws 2d (1971) [hereinafter "Restatement"], §§ 188, 193).

As with the venue ruling, the magistrate judge offered a thoughtful assessment of the choice of law question. Noting that the underlying complaint purported to assert the claims of a nationwide class against Auto Europe, he rejected the relevance of the location of the named plaintiffs' individual transactions because "an unknown number of plaintiffs in an unknown number of locations may have claims that fit within the purported class." He also noted that the complaint alleged that Auto Europe's principal place of business was in Portland, Maine, and because no other business location is identified, "[b]y terms of the complaint Auto Europe could only have acted in Maine." Recommended Decision at 7. The magistrate judge thus viewed Maine as "the principal location of the insured risk," and ruled that, under Baybutt, Maine law should apply.

CI contends that the law of either Florida or Illinois would be more appropriate than Maine law because both "would appear to have more significant interests in this coverage litigation and greater contacts with the transactions underlying the dispute than

does Maine." According to CI, Florida is significant because the contract that provides the insurance coverage at issue in this case was negotiated and delivered there to Auto Europe's corporate parent. The policy insured more than two dozen affiliates or subsidiaries in a variety of locations, and Auto Europe apparently was the only one located in Maine. CI also cites Illinois' central importance to this case as the home state of the named plaintiffs in the Harter litigation. The two plaintiffs who did business with Auto Europe booked their rental cars through local travel agents in Chicago, and Illinois is also where the underlying lawsuit is pending.

We can easily eliminate the law of Florida as more appropriate than Maine law for resolving the coverage issue. Our reading of the authorities indicates that a policy covering numerous related companies located in different states would be deemed a multiple risk policy that, for Maine choice of law purposes, would be viewed in a particular case as if a separate policy had been issued to cover each entity. See Baybutt, 455 A.2d at 919; Restatement, § 193, comment f. Because Florida's status stems only from its role with respect to the overall policy, its significance in this case thus drops away, and the question becomes whether Maine – Auto Europe's principal location – should provide the substantive legal principles, or whether, "with respect to the particular issue

involved, [Illinois] has a more significant relationship to the transaction and the parties," Baybutt, 455 A.2d at 918.

We think the district court got it right. Auto Europe, a Maine business with offices only in Maine, is alleged to have committed consumer fraud by its conduct in Maine.[5] Although the named plaintiffs live in Illinois, and presumably for that reason found it convenient to file their lawsuit there, Illinois cannot be said to have a more significant relationship to the parties and transaction than does Maine. To be sure, the plaintiffs' home state has a substantial interest in ensuring that its citizens are not defrauded by out-of-state companies operating through local agents. Under Maine's choice of law principles, however, its own substantial interests take precedence because, as Auto Europe's home base, Maine is "the principal location of the insured risk."[6]

---

[5] Paragraph 82 of the amended complaint alleges that "the deceptive pricing and other deceptive acts took place at the Auto Europe's principal place of business which is Maine . . . ."

[6] We recognize that the location of the risk in Baybutt and similar cases, see, e.g., Gates Formed Fibre Prods., Inc. v. Plasti-Vac, Inc., 687 F. Supp. 688 (Me. 1988), differs from the scenario here because the underlying plaintiffs in those cases were physically located where the insured activity – the alleged harm – occurred. This is not a difference that affects our analysis, however. An insured risk is "'the object or activity which is the subject matter of the insurance,' and 'has its principal location . . . in the state where it will be during at least the major portion of the insurance period.'" Id. at 690 (quoting Restatement, § 193, comment b). The insured risk here was the conduct of a travel agency whose only business location was in Maine; the physical location of its customers does not change the location of the risk.

The district court therefore correctly ruled that Maine law governs the coverage dispute.[7]

## IV. Duty to Defend

Under Maine law, the duty to defend is determined by means of the comparison test: the complaint in the underlying lawsuit is compared with the insurance policy to ascertain if "'there exists any legal or factual basis which could be developed at trial which would obligate the insurers to pay under the policy.'" United Bank v. Chicago Title Ins. Co., 168 F.3d 37, 39 (1st Cir. 1999) (quoting NE Props., Inc. v. Chicago Title Ins. Co., 660 A.2d 926, 927 (Me. 1995)); see also Me. Mut. Fire Ins. Co. v. Gervais, 715 A.2d 938, 940 (Me. 1998).

> If the complaint shows even a possibility that the events giving rise to it are within the policy coverage, the insurer must defend the suit. Any ambiguity must be resolved in favor of a duty to defend.

Mass. Bay Ins. Co. v. Ferraiolo Constr. Co., 584 A.2d 608, 609 (Me. 1990); see also York Ins. Group of Maine v. Lambert, 740 A.2d 984, 985 (Me. 1999).

---

[7] We offer two passing thoughts. First, as the magistrate judge observed and our discussion reveals, CI's complaint about inadequate opportunity for discovery is without force; the information it sought to obtain, regarding other insureds on the policy with Auto Europe, was unnecessary for the choice-of-law inquiry because the information already available showed that the covered businesses were located in various states. Second, on the primary substantive issue – the duty to defend – the choice of law is likely of no consequence because the relevant law in Maine and Illinois, and probably Florida as well, appears to be the same. See infra at 11-13.

-10-

The magistrate judge, affirmed by the district court, found a duty to defend based on the possibility that the proof at trial would establish a non-intentional violation of the Maine Unfair Trade Practices Act (UTPA), Me. Rev. St. Ann. tit. 5, §§ 205-A-214 (West 2002).[8] CI contends that the district court erred because the Harter complaint alleges only intentional fraud, bringing it within the policy exclusion for willfully dishonest or fraudulent acts. CI cites caselaw from Illinois and Florida for the proposition that coverage is unavailable under exclusions similar to the one here when the complaint is limited to allegations of intentional conduct, even if the facts would have permitted recovery based on theories not covered by the exclusion. See, e.g., Fed. Ins. Co. v. Applestein, 377 So.2d 229, 231 (Fla. App. 1979) (holding that, notwithstanding policy coverage for libel and slander generally, allegations that comments were made "'with malice'" and "in a specific 'attempt to discredit'" the underlying plaintiff "completely negate coverage by conclusively establishing that the exclusion applies"); United Fire & Cas. Co. v. Jim Maloof Realty, Inc., 435 N.E.2d 496, 498-99 (Ill. App. 1982) ("[S]ince the factual allegations of the complaint are premised upon only one theory of recovery, that of intentional fraud, and do not fall within the potential coverage of the insurance policy, United has

[8] An act may be deceptive under the statute "even though the defendant had no purpose to deceive and acted in good faith." Binette v. Dyer Library Ass'n, 688 A.2d 898, 906 (Me. 1996).

-11-

no duty to defend its insureds."). CI argues that the Maine comparison test requires the same result, although it notes that no Maine cases have explicitly addressed the circumstance of a complaint alleging only intentional conduct where recovery based on less-than-intentional conduct also could have been sought.

Although we doubt that CI could prevail even under the law of Florida or Illinois where, as here, the relevant cause of action does not require intentional conduct for recovery,[9] we are certain that, under Maine law, CI's argument is without merit. We simply note, in passing, that some of the cases relied upon by CI are distinguishable because they involved either underlying causes of action limited to intentional conduct, see, e.g., Ill. Farmers Ins.

---

[9] In the action filed by CI in Illinois against the other Harter defendants, the district court observed that Maine and Illinois law are "analogous . . . on an insurer's duty to defend," Conn. Indem. Co. v. Auto Europe, LLC, 2002 WL 1806891 (N.D. Ill.), at *5, and, applying Illinois law, the court found a duty to defend the claim brought under the Illinois consumer fraud statute, noting that "[t]he complaint does not clearly preclude . . . liability under a reckless or negligence standard, or even through proof of an innocent misrepresentation," id. at *4. See also Knoll Pharm. Co. v. Auto. Ins. Co. of Hartford, 152 F. Supp.2d 1026, 1034 (N.D. Ill. 2001) ("If the underlying complaint alleges facts that fall within, or even potentially within, the coverage outlined in the relevant policy, the insurer owes a duty to defend."). Florida cases also impose a duty when there is a "potential" for coverage. See, e.g., Lime Tree Vill. Cmty. Club Ass'n, Inc. v. State Farm Gen. Ins. Co., 980 F.2d 1402, 1406 (11th Cir. 1993) ("The insurer must defend when the complaint alleges facts which fairly and potentially bring the suit within policy coverage."); Cabezas v. Fla. Farm Bureau Cas. Ins. Co., 830 So.2d 156, 158 (Fla. App. 2002) ("If the allegations in a complaint when fairly read[] allege facts which create potential coverage under the policy, the insurer must defend the lawsuit.")(emphasis omitted).

<u>Co.</u> v. <u>Preston</u>, 505 N.E.2d 1343, 1347 (Ill. App. 1987) (noting that the claim assertedly within the policy's coverage was based on 42 U.S.C. § 1983, which offers "no remedy . . . based upon the mere negligence of the defendant"); <u>Jim Maloof Realty, Inc.</u>, 435 N.E.2d at 498-99 (observing that underlying complaint "essentially states one cause of action, that of intentional fraud"), or factual situations that foreclosed the possibility of unintentional conduct, <u>see</u>, <u>e.g.</u>, <u>Rubloff, Inc.</u> v. <u>Am. Nat'l Fire Ins. Co.</u>, 1997 WL 264327, at *6 (N.D. Ill.) ("negligent conduct is not even a theoretical possibility under [the] complaint"). In other words, in these cases, the theory of relief chosen by the underlying plaintiff depended upon a showing of deliberate conduct, placing any possible recovery outside the policy's coverage, and leaving the insurer with no duty to defend.

Here, by contrast, not only does the cause of action at issue – the Maine UTPA – permit liability in the absence of an intent to deceive, but Maine law also broadly extends the duty to defend to claims that could be developed either legally or factually at trial so as to fall within the policy's coverage. Like the district court, we think it certainly possible in this case that the facts as developed at trial would reveal an improper practice that was unaccompanied by an intent to deceive. Thus, even if a jury rejected the Harter plaintiffs' precise theory of deliberate misrepresentation, they would retain the possibility of recovery

under the UTPA. CI consequently is obliged to defend the Harter lawsuit. See, e.g., Me. Mut. Fire Ins. Co., 715 A.2d at 942 ("[B]ecause [the underlying defendant] may be found to have intentionally inflicted emotional distress without subjectively intending or foreseeing the alleged distress suffered by [the plaintiff], the exclusion for intended or expected bodily injury is inapplicable.").

In sum, when the cause of action alleged as the basis for liability does not include elements that would foreclose coverage, and where the events giving rise to the complaint may be shown at trial to fall within the policy's coverage, Maine law entitles the insured to a defense. See id. Indeed, we suspect that Maine's inclusive approach to the duty to defend is designed precisely for circumstances such as these – where a narrow reading of the complaint's factual allegations might preclude coverage, but the alleged cause of action is sufficiently broad that a modified version of the facts could be developed at trial to show liability.

The district court therefore properly ruled that CI has a duty to defend the Harter lawsuit.

## V. Attorney's Fees

Auto Europe sought reimbursement of the attorney's fees incurred in pursuing this declaratory judgment action, and following the district court's grant of that request, the parties stipulated to the amount of $42,675.91. Maine law authorizes an

-14-

award of attorney's fees against an insurer when its "duty to defend is clear from the policy and the pleadings," Maine Mut. Fire Ins. Co. v. Gervais, 745 A.2d 360, 362 (1999) (internal citation omitted).

> To determine whether a duty to defend is "clear" for purposes of awarding attorney fees, a court must evaluate state law regarding an insurer's duty to defend as it existed at the time the insurer initiated the declaratory judgment action.

Id. Our review of the district court's decision is de novo. Id.

Without elaborating, the district court concluded that Auto Europe was entitled to fees "because the duty to defend was and is clear." We agree with that conclusion. Although CI might legitimately have entertained some doubts about whether the comparison test inevitably required a defense in all three relevant jurisdictions,[10] the case law in each is unequivocal in directing that any lack of clarity must be resolved in favor of the insured. See Ferraiolo Constr. Co., 584 A.2d at 609 ("Any ambiguity must be resolved in favor of a duty to defend.") (Maine law); Wilkin Insulation Co., 578 N.E.2d at 930 ("All doubts and ambiguities must be resolved in favor of the insured.") (Illinois law); Lime Tree

---

[10] As our prior discussion suggests, see supra at 11-12, a quick review of Florida cases leaves some ambiguity on whether allegations of intentional conduct eliminate the duty to defend pursuant to an intentional acts policy exclusion even when facts could be developed at trial to support judgment for the plaintiff based on non-intentional conduct. See, e.g., Applestein, 377 So.2d at 231 (holding that allegations of malice and deliberate "'attempt to discredit'" negated coverage).

<u>Vill. Cmty. Club Ass'n</u>, 980 F.2d at 1405 ("If the allegations of the complaint leave any doubt as to the duty to defend, the question must be resolved in favor of the insured.") (Florida law). Regardless of which of the three state's laws applied, the potential for coverage existed at the time CI refused to defend Auto Europe. The duty to defend was therefore "clear" and, accordingly, the district court properly awarded attorney's fees.

## VI. <u>Conclusion</u>

The district court properly concluded that this insurance coverage dispute should be heard in Maine and resolved pursuant to Maine law. Because CI's duty to defend was clear, the district court properly awarded attorney's fees to Auto Europe.

<u>The judgment of the district court is therefore affirmed.</u>