*Vermont Agency of Natural Resources v. The Charter Oak Fire Insurance Agency*, No. 159-3-12 Wncv (Teachout, J., June 26, 2015)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

## STATE OF VERMONT

| | |
|---|---|
| **SUPERIOR COURT** | **CIVIL DIVISION** |
| **Washington Unit** | **Docket No. 159-3-12 Wncv** |

**STATE OF VERMONT AGENCY**
**OF NATURAL RESOURCES**
  **Plaintiff**


  **v.**


**THE CHARTER OAK FIRE INSURANCE COMPANY**
**and THE TRAVELERS INDEMNITY COMPANY OF**
**RHODE ISLAND, n/k/a THE TRAVELERS**
**INDEMNITY COMPANY OF CONNECTICUT,**
  **Defendants**


### DECISION
### Cross Motions for Summary Judgment

For many years, disbursements from Vermont's petroleum cleanup fund have covered investigation, removal, and cleanup costs related to longtime petroleum contamination at the Jimmy Kwik Food Store, a "beverage store and gas station" in Newport. In this case, the Vermont Agency of Natural Resources seeks reimbursement for those expenditures from Defendant Insurers (collectively, Charter Oak) that allegedly issued policies for the Jimmy Kwik premises with applicable pollution coverage. The State has filed a motion for summary judgment seeking to establish Charter Oak's liability on the policy in effect in 1994 (the 1994 policy). Charter Oak has filed a motion for summary judgment addressing liability and numerous other issues under the entire succession of policies that begins in 1987 and ends in 2002.

Charter Oak comprehensively briefed its summary judgment motion with regard to each of the policies in effect between 1987 and 2002. In its motion, the State seeks liability on the 1994 policy only. It does not attempt to establish liability on any other policy and has not objected to Charter Oak's summary judgment motion with respect to policies other than the 1994 policy. The court concludes that the State assents to summary judgment in Charter Oak's favor on all policies other than the 1994 policy.

Among the many issues briefed by the parties is Charter Oak's argument that the statute of limitations expired before the State filed this action and before the parties agreed to toll any unexpired limitations periods. Because this issue is dispositive, the court addresses it first.

*Undisputed Facts*

The site of the contamination has been a gas station since the 1950s. Its underground storage tank system originally was installed in 1973. Michael and Danielle Marcotte purchased

the business in 1985 and still own it. Petroleum contamination was observed in 1986 in the course of replacing two underground gasoline storage tanks. The State investigated and several groundwater monitoring wells were installed. The contamination was not reported to Charter Oak. In 1989, the State instructed the Marcottes to take several steps in response to the continuing contamination. The Marcottes took no responsive action and did not report the State's request to Charter Oak.

In 1994, an environmental consultant investigated the site and reported its findings of contamination to the State. The State responded by requesting that the Marcottes hire an environmental consultant to perform certain work at the site. The State informed them as follows:

> The underground storage tanks at Jimmy's Quick Stop are covered by the Petroleum Cleanup Fund as set forth in 10 V.S.A. Section 1941. The owner or permittee must pay for the removal or repair of the failed tank and for the first $10,000 of the cleanup; after that the fund will reimburse the tank owner or permittee for additional cleanup costs up to $1 million. Attached please find the document titled "Reimbursement Package for the Petroleum Cleanup Fund" which further explains this program. Additionally, the Secretary of the Agency of Natural Resources reserves the right to seek cost recovery of fund monies spent at the Jimmy's Quick Stop site if the Secretary concludes that Michael and Danielle Marcotte was [sic] in significant violation of the Vermont Underground Storage Tank statutes (10 V.S.A. Chapter 59).

Letter from Richard Spiese to the Marcottes 2 (dated July 21, 1994). In September 1994, the State ordered the Marcottes to take additional steps in relation to the contamination. Letter from Richard Spiese to the Marcottes 2 (dated September 29, 1994). They did not report these requests for action to Charter Oak.

The State believes that it can prove that a discrete pollution event occurred in 1994 that is distinguishable from the historical contamination still present on the site.

Between 1994 and 2001, the Marcottes cooperated with the State's testing, monitoring, and remediation requests. On May 4, 2001, the Marcottes first applied for reimbursement from the petroleum cleanup fund for their costs exceeding $10,000. Their application was approved. However, in 2002, the State indicated that the Marcottes' proof of no insurance was insufficient. The Marcottes' insurance agent then filed a claim with Charter Oak. Charter Oak denied coverage on all of the successive policies in August 2002. Petroleum cleanup fund disbursements have continued since.

On June 7, 2010, the State and Charter Oak stipulated that any limitations period not already expired would be tolled for a time. The State filed this action before the extended tolling agreement expired.

Monitoring and remediation, begun in earnest in 1994, is ongoing. Throughout this time, there has been concern that petroleum contamination originating offsite has migrated onsite and

that contamination originating onsite has migrated offsite.

*The petroleum cleanup fund*

ANR collects licensing and petroleum tank fees that are deposited into the petroleum cleanup fund. 10 V.S.A. § 1941(a). The fund is available to cover *uninsured* cleanup and restoration costs related to releases from petroleum tanks after the tank owner or operator first covers the applicable statutory amount of costs. *Id*. § 1941(b)(1). Disbursements from the fund are in ANR's discretion. *Id*. § 1941(b) ("The secretary may authorize disbursements from the fund . . . ."). ANR also has discretion to seek reimbursement for expenditures "when the owner of the tank is in significant violation of his or her permit or rules, or when a required fee has not been paid for the tank from which the release occurred or, *to the extent covered, when there is insurance coverage*." *Id*. § 1941(f). The emphasized language authorizes a direct action by ANR against the insurer alleged to have covered the risk. *Agency of Natural Resources v. U.S. Fire Ins. Co.*, 173 Vt. 302, 307 (2001).

In this case, the State argues that coverage is available in the 1994 Charter Oak policy and it seeks reimbursement for cleanup fund expenditures directly against Charter Oak. Charter Oak argues that this claim is long out of time under the applicable statute of limitations.

*Statute of limitations*

The parties disagree about which statute of limitations applies.

Charter Oak's position: Title 12 statute for general civil actions. Charter Oak argues that the limitations period generally applicable to civil actions (including actions on contracts) applies, 12 V.S.A. § 511 (6 years after accrual date). Title 12 is entitled "Court Procedure," and § 511 is in Chapter 23, which is entitled "Limitation of Time for Commencement of Actions." The general rule is that, unless a more specific limitations statute applies, the statute applicable to actions on contracts applies to insurance policy coverage disputes. *Insurance Co. of North America v. Superior Court*, 800 P.2d 585, 589 (Ariz. 1990); *Crest-Foam Corp. v. Aetna Ins. Co.*, 727 A.2d 1030, 1034 (N.J. App. Div. 1999). Charter Oak argues that this is a coverage case in which the State is making a claim for a money judgment based on an insurance obligation. Charter Oak argues that, therefore, this is an insurance contract case, and the "regular" six-year statute of limitations for civil actions, found in § 511, applies.

State's position: Title 10 statute for environmental enforcement actions. The State argues that a limitations period applicable to environmental enforcement actions applies, 10 V.S.A. § 8015(2) (6 years "from the date a continuing violation ceases").[1] Section 8015 is found in Chapter 201 of Title 10. The name of Title 10 is "Conservation and Development," and Chapter 201 is entitled "Administrative Environmental Law Enforcement." Section 8015 is applicable to enforcement activities undertaken by the Secretary of ANR, who is empowered to

---

[1] Charter Oak argues that even if 10 V.S.A. § 8015(2) applies to this case, based on its interpretation of the statute, the limitations period expired before the beginning of the stipulated tolling period. Because the court concludes that § 511—not § 8015—applies to this case, it declines to address Charter Oak's interpretation of § 8015(2).

enforce laws, rules, and regulations related to underground storage tanks.[2]

Section 8015 reads:

Notwithstanding any other provision of law, actions brought under this chapter or chapter 211 of this title shall be commenced within the later of:
(1) six years from the date the violation is or reasonably should have been discovered; or
(2) six years from the date a continuing violation ceases.

In the State's view, the violation at the Jimmy Kwik Food Store is "continuing" to date and thus this action necessarily is timely.

Section 8015 refers to actions brought under both Chapter 201 ("Administrative Environmental Law Enforcement") and Chapter 211 ("Civil Enforcement"). Chapter 211 of Title 10 consists solely of 10 V.S.A. § 8221, which specifies that it applies to actions to enforce provisions of § 8003(a), which authorizes both administrative and court enforcement of laws, rules, and regulations related to underground storage tanks, and makes reference to § 1941(f). The State argues that through this series of cross references, the applicable statute of limitations for a § 1941(f) action is found in § 8015, and that the generally applicable six-year statute of limitations does not apply.

The issue presented by the parties has been addressed by the Vermont Superior Court at least twice with divergent results. In *State v. Stonington Ins. Co.*, No. 811-12-02 Wncv, 2007 WL 3234763 (Vt. Super. Ct. July 27, 2007), this court ruled as follows:

The State's direct claim for reimbursement, 10 V.S.A. § 1941(f), allows it to stand in the shoes of the insured and seek coverage from the insurer. Section 1941(f) does not create a new cause of action per se; rather, it allows the State to pursue the cause of action that otherwise is available only to the insured. For purposes of determining how the limitations statutes apply, this case essentially presents the same circumstances as if the State first sued the insured, and the insured then sued the insurer for coverage. [That is, the 10 V.S.A. § 1941(f) claim against the insurer is subject to 12 V.S.A. § 511.]

---

[2] Section 8003 provides:

(a) The secretary [of ANR] may take action under this chapter to enforce the following statutes and rules, permits, assurances, or orders implementing the following statutes:

. . .

(8) 10 V.S.A. chapter 59, relating to underground storage tanks.

10 V.S.A. § 8003(a). Chapter 59 of Title 10 includes 10 V.S.A. § 1941(f), which authorizes the State's direct action against Charter Oak.

The court held that the limitations period applicable to the underlying 10 V.S.A. § 6615 *enforcement* claim against the insured is that set out at 10 V.S.A. § 8015, whereas the limitations period applicable to the reimbursement liability claim against the insurer, established by contract with the insured, is the contract statute of limitations set out at 12 V.S.A. § 511.

The following year, in a different case, the opposite outcome prevailed. In *State v. OneBeacon America Ins. Co.*, No. 485-7-07 Wncv (Vt. Super. Ct. Nov. 17, 2008), the court ruled that 10 V.S.A. § 8015 applied based on the following reasoning:

> It would make little sense from the legislature's point of view to treat actions for reimbursement to the Fund differently depending upon who was being sued. As ANR points out, that might require ANR to file one action against an insurer early on, although it would file another against the landowner years later. The court doubts that the legislature would have intended such a scenario. The court therefore concludes that the statute providing for a six year statute of limitations running from the time a continuing violation ceases [10 V.S.A. § 8015(2)] applies here [to the State's 10 V.S.A. § 1941(f) reimbursement claim against an insurer].

Neither the *Stonington* nor the *OneBeacon* ruling was appealed, so the specific issue has not been addressed by the Vermont Supreme Court. However, in ruling on a different issue in a § 1941(f) action, the Court used the analytic framework that "the State stands in the shoes of the insured when it sues the insurer." See *Bradford Oil Co., Inc. v. Stonington Ins. Co.*, 2011 VT 108, ¶ 14, 190 Vt. 330. This case presents another opportunity to consider whether 12 V.S.A. § 511 or 10 V.S.A. § 8015 applies to a direct action under 10 V.S.A. § 1941(f) brought by the State against an insurer for funds available based on an insurance contract.

The limitations statute at 10 V.S.A. § 8015 originated in "An Act Relating to Administrative Enforcement of Specified Environmental Laws." 1989, No. 98. The Act added chapter 201 (Administrative Environmental Law Enforcement) to Title 10, *id*. § 1; it created the environmental court, *id*. § 2; and it added chapter 211 to title 10, broadly authorizing civil enforcement actions in superior court by ANR, *id*. § 3. Plainly, the focus of Act 98 was squarely on remedies related to enforcement where there have been violations of Vermont's various environmental statutes.

Section 8015 appears in chapter 201. Chapter 201 authorizes ANR to directly enforce various environmental statutes, including those relating to the petroleum cleanup fund, 10 V.S.A. § 8003(a), and Act 250, 10 V.S.A. § 8004. Specifically, chapter 201 authorizes inspections and investigations, 10 V.S.A. § 8005(a), access orders, *id*. § 8005(b), warnings and notices of alleged violations, *id*. § 8006, assurances of discontinuance, *id*. § 8007, administrative orders predicated on violations, *id*. § 8008, landfill closure extension orders, *id*. § 8008a, and administrative penalties predicated on violations, *id*. § 8010. All of these are enforcement actions that an administrative agency would take in response to violations of environmental laws. See 10 V.S.A. § 8002(9) (defining "violation" as "noncompliance with one or more of the statutes

specified in section 8003 of this title, or any related rules, permits, assurances, or orders"). The statute of limitations at 10 V.S.A. § 8015 reflects this emphasis on enforcement by fixing accrual on the later of the date the violation should have been discovered or the date that a continuing violation ceases. There is no apparent legislative intent to disturb private contract rights. An insurer's obligation to cover its insured's liabilities is the insured's private contract right and it is wholly collateral to the issue of enforcement.

There is no contrary intent expressed in 10 V.S.A. § 1941(f). Section 1941(f) does not permit the State to bring an environmental *enforcement* action against the responsible party's insurer. It merely allows the State to adopt the insurance contract rights of the insured and pursue those rights to obtain a money judgment in the same manner that the insured could have. See *Bradford Oil Co., Inc. v. Stonington Ins. Co.*, 2011 VT 108, ¶ 14, 190 Vt. 330 ("As the trial court held, the State stands in the shoes of the insured when it sues the insurer."). Just as in *Bradford Oil*, the State here is attempting to do something that Charter Oak's insured could not: in this case, the State seeks coverage and insurance reimbursement in an action brought after the generally applicable limitations statute has expired, and therefore after the insured would have been able to do so.

As the *Stonington* court ruled, § 1941(f) merely allows "the State to pursue the cause of action that otherwise is available only to the insured." *State v. Stonington Ins. Co.*, No. 811-12-02 Wncv, 2007 WL 3234763 (Vt. Super. Ct. July 27, 2007). To the extent that the *OneBeacon* court was persuaded that the legislature could not have intended different limitations statutes to apply depending on whether the State is seeking reimbursement to the cleanup fund from the tank owner or the insurer, the incongruity of the State's interpretation is far worse. An insurer's exposure would remain in effect for a much longer time than its obligation to its insured, and the obligation would *change* at the expiration of the statute of limitations period applicable to the insured: the insured could no longer sue on the contract, but the State could.

Disbursements, unless made on an emergency basis, are not supposed to occur when insurance is available. In cases where insurance is available, the State presumably is intended to take action against the tank owner or operator, who then must pursue available insurance coverage in a civil action that is *subject to 12 V.S.A. § 511*. All § 1941(f) does is simplify and streamline the process by authorizing the State to seek the insurance funds directly rather than having to rely on the insured to pursue court processes correctly.

If the State's interpretation of 10 V.S.A. § 8015 were correct, the insured could become forever foreclosed from pressing its policy rights by sleeping on them until the limitations period expires, whereas the insurer's liability could continue indefinitely. Expiration of the limitation period would settle nothing for the insurer because the State still would be able, at least in cases of continuing violations, to bring its own action against the insurer. It does not make sense for the insurer's liability under an insurance contract to last longer than the law otherwise provides depending on whether a suit on the contract is brought by the insured or the State. It also does not make sense for the State to derive a benefit from an insurance contract that is not available to the insured. It is highly implausible that the legislature could have intended a limitations statute that was intended to apply to enforcement actions to be used to modify private contract rights in such an unreasonable fashion.

6

Moreover, the only way to find that 10 V.S.A. § 8015 is the applicable statute of limitations is to follow an attenuated trail of cross references in a number of statutes. This does not represent a reasoned legislative intent to depart from either the standard statute of limitations for civil actions in 12 V.S.A. § 511, or from the settled law on the statute of limitations applicable to insurance coverage cases.

The court concludes that 12 V.S.A. § 511 applies to 10 V.S.A. § 1941(f) reimbursement claims against insurers.

In no event could the claim for coverage against Charter Oak have accrued any later than its denial of coverage in August 2002. The limitations period thus expired in August 2008, well before the parties agreed to toll any unexpired limitations periods.

In summary, the State's § 1941(f) claim is barred by 12 V.S.A. § 511.

*Unjust enrichment*

The State's unjust enrichment claim fares no better. The State claims that it would be inequitable to permit Charter Oak to retain a benefit, not paying for the cleanup, after wrongfully denying coverage. Assuming that such facts could be a properly stated claim of unjust enrichment, in this case, that claim would have accrued no later than the date of the insurer's coverage denial and expired 6 years later. See *Stankiewicz v. Estate of Larose*, 151 Vt. 453, 456–57 (1989). The limitations period for this claim thus also expired in August 2008, well before the parties agreed to toll any unexpired limitations periods.

## ORDER

For the foregoing reasons, the State's motion for summary judgment is denied and Charter Oak's is granted.

Dated at Montpelier, Vermont this _____ day of June 2015.

_____
Mary Miles Teachout
Superior Judge

7