*Antley v. Allstate Ins. Co.*, No. 677-8-16 Cncv (Mello, J., Nov. 7, 2017).

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

VERMONT SUPERIOR COURT
CHITTENDEN UNIT
CIVIL DIVISION

| | |
|---|---|
| CATHERINE ANTLEY and GIDEON BAVLY,<br>  Plaintiffs<br><br> v.<br><br> ALLSTATE INSURANCE COMPANY,<br>  Defendant | Docket No. 677-8-16 Cncv |

## RULING ON MOTIONS FOR SUMMARY JUDGMENT

This matter involves an insurance coverage dispute. Plaintiffs ("Antley") seek coverage through their homeowners insurance policy for claims made against them in another pending lawsuit. Stevens v. Antley, 152-2-14, Cncv. Defendant Allstate Insurance Company ("Allstate") had started defending Antley in that case, and then ceased its defense after the plaintiffs dropped certain claims. The remaining claims, Allstate contends, are not covered under the policy, and therefore it had no duty to defend. Also at issue here is the enforceability of a Reservation of Rights and Non-Waiver Agreement that purportedly gives Allstate the right to withdraw from its defense of Antley at any time. Both parties have moved for summary judgment. Paul S. Gillies and Ryan P. Kane, Esqs. represent Antley. John E. Brady, Esq. represents Allstate.

## Undisputed Facts

In February 2014, Leduc, Stevens, and Thompson brought a civil action against Antley, which included counts for quiet title, slander of title, and trespass with resulting property damage. Stevens v. Antley, 152-2-14, Cncv. Antley subsequently counterclaimed for trespass with resulting property damage. Antley sought indemnification and defense from Allstate under her homeowners policy and personal umbrella policy. Allstate denied coverage under the homeowners policy, but agreed to provide a defense under the umbrella policy pursuant to a Reservation of Rights and Non-Waiver Agreement, signed by Antley on February 15, 2016. That agreement cites several provisions from the umbrella policy under which Allstate agreed to provide a defense, including definitions of occurrence, bodily injury, personal injury, and property damage. That agreement also provides, in pertinent part:

> That the insurance company may withdraw from the investigation or defense of any or all claims and/or suits

arising out of the incident, including, but not limited to the lawsuit, at any time and discontinue its services, investigations, negotiations or defense, provided that it shall give the insured such reasonable notice of its election as circumstances permit.

Non-Waiver Agreement at 2. The Agreement further provides:

That the insured agreement not to hereafter assert any claim of waiver or estoppel or any other defense against the insurance company because of and/or arising out of the insurance company's investigation of any claim and/or suit arising out of the incident, including but not limited to the lawsuit, because of and/or arising out of any negotiations for settlement, or because of and/or arising out of any settlement or defense of any claim and/or suit arising out of the incident, including, but not limited to the lawsuit, which may have occurred prior to the date of execution of this agreement, or which may occur at any time hereafter.

Id.

The plaintiffs in the underlying action voluntarily dismissed counts I through III (slander of title, trespass, and acquiescence) in June 2016. The remaining counts are for quiet title (count I) and a declaratory judgment (count II). Allstate (through its attorney) subsequently moved to withdraw, and this court granted that motion on September 26, 2016. Antley then commenced this action against Allstate, seeking a declaratory judgment defining Allstate's obligation to defend her in the underlying suit, as well as an injunction ordering Allstate to provide such a defense and pay costs and fees uncovered to date.

Discussion

Antley asserts that Allstate has a duty to defend as a matter of law under the policy and the underlying complaint. She further maintains that, even if there is no duty to defend, Allstate is now estopped from disclaiming coverage because the reservation of rights and non-waiver agreement is unenforceable. Allstate contends that the dismissal of certain claims in the underlying action has resulted in no possible duty to indemnify, and that the non-waiver agreement is enforceable.

I.      Allstate's Duty to Defend

Interpretation of an insurance policy, like other contracts, is a question of law. Shriner v. Amica Mut. Ins. Co., 2017 VT 23, ¶ 6; State Farm Mut. Auto. Ins. Co. v. Colby, 2013 VT 80, ¶ 8, 194 Vt. 532 (citing Co–op. Ins. Cos. v. Woodward, 2012 VT 22, ¶ 8, 191 Vt. 348). An insurance policy must be construed according to its terms and the evident intent of the parties as expressed in the policy language, while disputed terms

2

should be read according to their "plain, ordinary and popular meaning." Agency of Natural Res. v. United States Fire Ins. Co., 173 Vt. 302, 308 (2001). This interpretation is guided by a "review [of] the language of an insurance contract from the perspective of what a reasonably prudent person applying for insurance would have understood it to mean." Woodward, 2012 VT 22, ¶ 9. Ambiguous policy language is construed in favor of the insured, "in accordance with the insured's reasonable expectations for coverage." Bradford Oil Co. v. Stonington Ins. Co., 2011 VT 108, ¶ 10, 190 Vt. 330. At the same time, however, courts "will not deprive the insurer of unambiguous terms placed in the contract for its benefit." Id. Courts must give insurance contracts a "practical, reasonable, and fair interpretation, consonant with the apparent object and intent of the parties, and strained or forced constructions are to be avoided." Id.

An insurer's duty to defend is broader than its duty to indemnify. City of Burlington v. Nat'l Union Fire Ins. Co., 163 Vt. 124, 127 (1994) (citing Garneau v. Curtis & Bedell, Inc., 158 Vt. 363, 366 (1992)). The insurer's duty to defend is determined "by comparing the allegations in the complaint of the underlying suit to the terms of coverage in the policy." Id. "If any claims are potentially covered by the policy, the insurer has a duty to defend. Conversely, where there is no possibility that the insurer might be obligated to indemnify, there is no duty to defend." Id. (citing Garneau, 158 Vt. at 366 (1992)); see also Hardwick Recycling & Salvage, Inc. v. Acadia Ins. Co., 2004 VT 124, ¶¶ 14–15, 177 Vt. 421 ("A claim against the insured triggers the insurer's duty to defend whenever it appears that the policy might cover that type of claim.").

Antley maintains that Allstate has a duty to defend her under the terms of the policy and the complaint in the underlying action. Antley acknowledges that the trespass claim was dismissed, but argues that because the factual allegations underlying that claim remain in the complaint, Allstate's duty to defend persists.

Allstate initially provided coverage because the umbrella policy covers "damages which an insured person becomes legally obligated to pay because of . . . personal injury or property damage . . . arising from a covered occurrence." An "occurrence" is defined as an "accident . . . resulting in . . . personal injury or property damage." According to the policy, "personal injury" includes "damages resulting from . . . wrongful entry; invasion of rights of occupancy," and "property damage" means "physical harm to or destruction of tangible property, including loss of its use resulting from such physical harm or destruction." The underlying complaint, under the heading "Count V Trespass," alleged that Antley and her agents trespassed by "unlawfully entering onto Plaintiffs' property," and that this trespass "has infringed upon the Plaintiffs' use and enjoyment" of their land. Stevens Compl. ¶¶ 33–34. An earlier paragraph of the complaint, under the heading "general allegations," claims that Antley has "entered onto the Plaintiffs' parcels without authorization in an attempt to develop a 50 foot improved access road from Mill Brook Road over the Plaintiffs' parcels to both the Callahan and Lathrop parcels that will be used for heavy vehicular traffic including large logging trucks." Id. ¶ 16. Antley contends that because the allegation in paragraph 16 technically remains part of the complaint, Allstate retains a duty to defend.

Generally, in deciding whether a duty to defend exists, a court "must focus on the factual allegations" of the underlying complaint, and "not on the legal theories asserted." TBH By & Through Howard v. Meyer, 168 Vt. 149, 153 (1998). Here, however, the court agrees with Allstate that Antley's argument irrationally elevates form over substance. The only relief the plaintiffs in the underlying action now seek pursuant to the remaining quiet title and declaratory judgment claims is for the court to adjudge and determine the location of the parties' respective property boundaries, as well as the existence, location, scope, and use of the rights-of-way benefitting and encumbering the respective parcels. The plaintiffs do not seek any damages for Antley's alleged unauthorized entrance on their land for the purpose of developing an improved access road. In fact, it appears that the plaintiffs seek no *damages* whatsoever. Thus, "there is no possibility that [Allstate] might be obligated to indemnify" and, consequently, "no duty to defend." City of Burlington, 163 Vt. at 127 (citing Garneau, 158 Vt. at 366).

Antley's interpretation would stretch the general rule, that courts focus on the factual allegations of the complaint rather than the legal theories asserted, well beyond its plainly intended application. "In deciding the scope of a liability policy's coverage, a court must compare the policy language with the *facts* pled in the underlying suit to see if the *claim* falls within the express terms of the policy; the legal nomenclature the plaintiff uses to frame the suit is relatively unimportant." Titan Holdings Syndicate, Inc. v. City of Keene, N.H., 898 F.2d 265, 271 (1st Cir. 1990) (cited with approval in Meyer, 168 Vt. at 153) (second emphasis added); *see also* City of Burlington, 163 Vt. at 127 ("If any *claims* are potentially covered by the policy, the insurer has a duty to defend.") (emphasis added). Here, the factual allegation in paragraph 16 of the complaint in the underlying action supported only the trespass claim, which was dismissed. Consequently, there can be no recovery of damages for that allegation.

Antley's reliance on Employers Mut. Cas. Co. v. Cedar Rapids Television Co., 552 N.W.2d 639, 643 (Iowa 1996) is unpersuasive. There, the Iowa Supreme Court held that an insurer's duty to defend continued after a cause of action for a theory of recovery specifically listed in the policy—malicious prosecution—was dismissed, because the operative facts of the remaining count for intentional interference with contract contained allegations of conduct that were arguably within the policy's coverage for malicious prosecution. Id. Here, however, the facts alleged in paragraph 16 of the complaint are irrelevant to the remaining claims and, as the complaint currently stands, recovery of damages as a result of those alleged facts is not possible. Moreover, the majority ruling in Employers Mutual Casualty Co. is at odds with contrary authority which this court finds persuasive:

> The rule . . . that the majority of this court would apply purports to turn on what damages might have been awarded under a legal theory covered by the policy if that claim *could have been made* on the facts of the case. . . . Contrary to the majority's suggestion, the duty to defend and the duty to indemnify both depend on whether the policy extends to the claims presented. The determination of whether these duties

4

exist will ordinarily be made at different times, however. If, while an action is pending, the pleadings or other circumstances suggest a possibility that the plaintiff will ultimately recover under a theory embraced by the policy, then the insurer must defend that claim. In these ambiguous pleading situations, an insurer may be required to defend a suit that is not ultimately within the scope of its liability coverage. That result is justified by the insurer's duty to defend against frivolous claims of the type insured. In the present case, however, there was no ambiguity at the pleading stage. The tort of malicious prosecution had been clearly identified in the initial pleading and then cleanly and unequivocally withdrawn from the case.

Employers Mut. Cas. Co., 552 N.W.2d at 645–46 (Carter, J., dissenting) (emphasis in original). As a Florida appellate court similarly held:

There is no doubt that Nationwide was under a duty to defend this action as originally filed. The facts alleged demonstrated coverage and did not fall within the policy exclusion. Nationwide's duty to defend continued until the amended complaint was filed, which alleged facts falling within the exclusion. Since the amended complaint alleged only a single cause of action, it became perfectly clear at that point that plaintiff's entire claim was based on events which fell within the policy exclusion. Since no other cause of action covered by the policy remained in the amended complaint, Nationwide's duty to defend terminated at that point.

Baron Oil Co. v. Nationwide Mut. Fire Ins. Co., 470 So. 2d 810, 815 (Fla. Dist. Ct. App. 1985) ("Once the insurer's duty to defend arises, it continues throughout the case unless it is made to appear by the pleadings that the claims giving rise to coverage have been eliminated from the suit.").

## II. Enforceability of Reservation of Rights and Non-Waiver Agreement

Ordinarily, when an insurer undertakes the defense of its insured, it waives any defenses against payment under the policy unless it explicitly reserves its rights. *See* Am. Fid. Co. v. Kerr, 138 Vt. 359, 363 (1980) (unilateral reservations by insurer are ineffective). Antley contends that the reservation of rights and non-waiver agreement here is overbroad, incomplete, contrary to public policy, and consequently unenforceable. Specifically, she complains that the agreement sets forth no basis for the reservation or conditions under which coverage may be withdrawn. Antley relies upon In re Lynch, 226 B.R. 813 (Bankr. D. Vt. 1998). In Lynch, the bankruptcy court held that a non-waiver agreement issued by an insurer, which does not set forth any specific grounds for a potential denial of coverage, is ineffective under Vermont law to preserve the insurer's

5

defenses to coverage. The court concluded that a reservation of rights or non-waiver agreement should either quote or make specific reference to policy provisions which are the basis for the insurer's reservation of rights. Id. at 815–16.

The Lynch decision interpreted perhaps the leading case regarding the validity of non-waiver agreements in Vermont, Cummings v. Connecticut Gen. Life Ins. Co., 102 Vt. 351 (1930). In Cummings, the Vermont Supreme Court held that when an insurer elects to specify reasons for denying coverage, it thereafter waives all other available grounds for denying coverage unless it expressly reserves the right to later raise other grounds. The Court stated: "[W]hen [an insurance company] deliberately puts [its] refusal to pay on a specified ground, and says no more, [it] should not be allowed to 'mend [its] hold' by asserting other defenses." Id. at 361–62; see also Hamlin v. Mut. Life Ins. Co., 145 Vt. 264, 268–69 (1984); Segalla v. United States Fire Ins. Co., 135 Vt. 185, 189 (1977) ("The general principle of law controlling in this jurisdiction is that: [w]hen one defense is specified by an insurer as to its reason for refusing to pay a loss, all others are waived."). This doctrine rests on Vermont's public policy favoring honesty between an insurer and its insured. Cummings, 102 Vt. at 361.

This court finds the reasoning of Lynch unpersuasive and declines to adopt it here. Instead, this court adopts the reasoning of a Vermont federal district court decision rejecting Lynch:

> [I]n Cummings, the Court set forth the rule that, when an insurer states one or more specified reasons for denying responsibility under a policy, it waives all other known grounds for denial. The Cummings Court did not, however, hold that when an insurer generally reserves all applicable coverage defenses without specifying any particular defenses, it is barred from raising specific defenses later. In 2008, referring to the "mend the hold" doctrine as the "insurance-defense-waiver rule," the Vermont Supreme Court acknowledged that a general reservation of rights avoids waiver of additional defenses, stating: "[A]n insurer waives additional defenses that are not raised *or reserved* in an initial denial of coverage." Progressive Ins. Co. v. Brown ex rel. Brown, 184 Vt. 388, 391–92 (2008) (emphasis added) (citing Cummings, 102 Vt. at 360). The Court continued: "[I]f an insurer initially denies coverage on a specified basis *and does not reserve the right to later raise other grounds,* it waives any additional defenses." *Id.* at 392 (emphasis added) (citing Hardwick Recycling & Salvage, Inc. v. Acadia Ins. Co., 177 Vt. 421, 427 (2004)). Clearly, the "mend the hold" doctrine does not bar insurers from generally reserving their right to assert coverage defenses.
> . . .

> The <u>Lynch</u> holding that a general reservation of rights is ineffective conflicts with the <u>Cummings</u> decision . . . and established Vermont jurisprudence. For example, in <u>Vermont Ins. Mgmt., Inc. v. Lumbermens' Mut. Cas. Co.</u>, 171 Vt. 601, 603 (2000), the Vermont Supreme Court held that, "[w]e have long recognized that a bilateral reservation of rights agreement prevents a waiver of the right to dispute coverage." And in <u>City of Burlington v. Hartford Steam Boiler Inspection and Ins. Co.</u>, 190 F. Supp. 2d 663, 681 (D. Vt. 2002), the District Court held that the "mend the hold" doctrine does not apply where the insurer is silent with respect to potential defenses and there is no allegation that the insurer misled the insured by denying coverage on one ground while defending itself in litigation on different grounds.

<u>The Standard Fire Ins. Co. v. Donnelly</u>, 689 F. Supp. 2d 696, 702–04 (D. Vt. 2010) (emphasis in original). The non-waiver agreement here is valid and enforceable, and extinguishes any estoppel argument by Antley.

Moreover, even were this court to adopt the <u>Lynch</u> rationale, it appears that <u>Lynch</u> is inapplicable here. The agreement between Antley and Allstate actually cites several specific provisions from the underlying insurance policy, including definitions of occurrence, bodily injury, personal injury, and property damage. The inclusion of those policy provisions plainly implies that those were the provisions under which Allstate had decided to provide coverage, and that Allstate might elect to discontinue coverage if a change in circumstances negated the applicability of those provisions. Thus, this was not a *general* reservation of rights, and <u>Lynch</u> would not apply even if it were binding precedent.

Order

Plaintiffs' motion for summary judgment is denied. Defendant's motion for summary judgment is granted.

SO ORDERED this 7th day of November, 2017.

_____
Robert A. Mello
Superior Court Judge

7